**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-4095

AUSTIN KEARNS, an individual; TRAVIS KEARNS, an individual,

Plaintiffs

v.

**Jury Trial Requested**

SCOTT OLIVER, an individual, SCOTT OLIVER LAW, LLC, a business entity, HANDY HIOE, an individual or pseudonym, FUJI MAKASURA, an individual or pseudonym, VINCENT WONG, an individual or pseudonym, JAY PARK, an individual or pseudonym, and JOHN/JANE DOES 1-10, not yet known.

Defendants.

---

# COMPLAINT

---

PLAINTIFFS Austin and Travis Kearns, by and through their counsel, Moriarty Underhill, LLC, submits their Complaint for money damages and penalties arising out of breach of contract for the sale of multiple expensive Ferrari and possible fraud in connection with the same perpetrated by a broker purporting to represent various individuals who may not actually exist.

## STATEMENT OF THE CASE

1. Travis and Austin Kearns signed multiple contracts to purchase sports cars, paying millions of dollar to Mr. Oliver and his firm. Mr. Oliver claimed to be acting as a broker for various individual clients in different countries each with special connections to Ferrari. However, no vehicles were ever delivered.

2. Mr. Oliver signed a contract agreeing to produce information to allow Plaintiffs to identify the other Defendants, but has since refused to produce anything. It now appears that there never were any vehicles in the first place, that Mr. Oliver's purported clients may not exist or were mere pseudonyms for unknown parties.

## PARTIES, VENUE, AND JURISDICTION

3. Plaintiff Austin Kearns is a Wisconsin resident with an address of 777 Wright Road, Johnson Creek, Wisconsin, 53038.

4. Plaintiff Travis Kearns is a Wisconsin resident with an address of 777 Wright Road, Johnson Creek, Wisconsin, 53038.

5. Defendant Scott Oliver is a Colorado resident with an address of 8280 Deer Run, Longmont, Colorado 80503.

6. Defendant Scott Oliver Law, LLC, is a Colorado limited liability company with a principal office located at 1729 Terry Street, Longmont, Colorado 80501 and a registered agent of Scott Oliver located at the same location.

7. Defendant Handy Hioe is the individual who signed one of several contracts for purchase of an expensive sports car with Plaintiffs under that name. According to the contract, his address is 1B Trengganu Street, Singapore 058455.

8. Defendant Fuji Maksura is the individual who signed one of several contracts for purchase of an expensive sports car with Plaintiffs under that name. According to the contract, his address is 161-1269 Nagatacho Sannapkutawa, Chiyoda-ku, Tokyo, Japan.

9. Defendant Vincent Wong is the individual who signed one of several contracts for purchase of an expensive sports car with Plaintiffs under that name. According to the contract, his address is Room 1502, 15/F, Tower 1, Silvercord, 30, Canton Road, Tsim Sha Tsul, Kawloon, Hong Kong.

10. Defendant Jay Park is the individual who signed one of several contracts for purchase of an expensive sports car with Plaintiffs under that name. According to the contract, his address is 38 Sin Ming Lane, #18-38, Midview City, Singapore 573969.

11. The John/Jane Doe Defendants are individuals who cannot currently be identified. If the names used to sign the contracts turn out to have been a false name, then the John/Jane Does include the true names of the seller or sellers on the contract. The remainder of this Complaint will refer to the sellers by the name used in the contracts, but this is inclusive of any John or Jane Does if it is discovered that these were false names.

12. The John/Jane Does also include any co-conspirators in connection with any fraud or wrongful acts.

13. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of different states, or citizens of a state and a foreign state.

14. Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a). The contract in dispute contains a provision stating that the parties irrevocably agreed to venue in Colorado for contractual and non-contractual disputes and that Colorado law applies to the dispute.

15. Upon information and belief, Defendant is not incompetent or in the military service of the United States.

## GENERAL ALLEGATIONS

16. Austin and Travis Kearns operate an auto dealership in Wisconsin dealing in high-end sports cars.

17. They was approached by Scott Oliver, a lawyer with Scott Oliver Law LLC about purchasing Ferraris.

18. Mr. Oliver claimed he was a broker representing various "clients" who were interested in selling exclusive Ferrari sports cards.

19. Ferrari sells some high-end sports cars that are not generally available to the public. Instead, they build and customize vehicles to order by certain individuals who have a special relationship with Ferrari.

20. Mr. Oliver claimed that his clients were some of these special individuals, with the ability to order and purchase cars from Ferrari that would not otherwise be available.

21. Mr. Oliver claimed his clients were Mr. Hioe, Mr. Makasura, Mr. Wong, and Mr. Park.

22. Plaintiffs found information online that seemed to confirm that people with these names had the financial clout and interest in sports cars that would make it credible he had access to Ferrari's exclusive deals.

23. Mr. Oliver confirmed Plaintiffs understanding and represented that they were dealing with sellers that had exclusive access to Ferrari.

24. Mr. Oliver opined that the transactions were legal but frowned on by Ferrari and for that reason his clients wanted to operate with discretion and confidentiality.

25. Mr. Olver further represented that the cars would be custom-built and so would take considerable time to deliver after initial deposits were paid.

26. Mr. Oliver had apparent authority and claimed to have actual authority to bind the individual sellers.

27. Mr. Oliver negotiated four deals and wrote the four contracts.

28. Austin Kearns and Mr. Hioe entered into a contract on December 22, 2022, for the purchase of a Ferrari 812 Competizione Aperta for a price of about $1.3 million.

29. Travis Kearns and Mr. Makasura entered into a contract on February 22, 2023, for the purchase of a Ferrari 812 Competizione Couple for a price of about $1.5 million.

30. Travis Kearns and Mr. Wong entered into a contract on February 22, 2023, for the purchase of a Ferrari 812 Competizione Aperta for a price of about $1.3 million.

31. Travis Kearns and Mr. Park entered into a contract on September 7, 2023, for the purchase of a Ferrari 812 Competizione Aperta for a price of about $1.1 million.

32. For each contract, Plaintiffs were to pay the price in installments including an initial deposit of around $600,000 or more.

33. Plaintiff paid all deposits into the trust account of the Oliver Law Firm, LLC.

34. Each contract stated that risk would remain with the seller until delivery to buyer.

35. Each contract contained a confidentiality provision but stated that that disclosure was permitted "where required by law."

36. Each contract required the seller to deliver the vehicle through a Ferrari dealer within a period of months of the vehicle being built and configured, with the precise number varying from varying from three to nine months depending on the contract.

37. Each seller expressly warranted that he had clear title and rights of ownership with the requisite power and authority to sell the vehicle.

38. Each seller expressly warranted that he would always act in good faith.

39. Each seller expressly warranted that there was no finance or encumbrance on the vehicle.

40. Each seller expressly warranted that no other party had any rights of ownership to the vehicle.

41. Each seller represented that all of the information he and his "brokers, agents, or representatives" relating to the vehicle was "accurate and comprehensive in all respects" and that there were no other material facts to disclose to the buyer.

42. As to Mr. Hioe's contract, the document depicts that it was signed electronically using "SignNow," a service that purports to provide secure and verified signatures. Mr. Hioe's signature came with an official eSignature ID verifying it was authentic.

43. The other contracts did not come with an eSignature ID.

44. On or after January 31, 2023, Mr. Oliver provided Plaintiffs with a document purporting to be an invoice from Ferrari confirming the configurations options had been selected and paid for.

45. Thus, per the contract, delivery of the first vehicle to take place no later than nine (9) months later, or by September 31 of 2023.

46. On or after February 2, 2023, Mr. Oliver provided Plaintiffs with a delivery confirmation claiming that the vehicle would be delivered to Ferrari of Palm Beach, Florida.

47. On or after February 21, 2023, Mr. Oliver provided Plaintiffs with a purported confirmation of receipt from Ferrari showing that Mr. Hioe had paid Ferrari for the vehicle or customization for the vehicle.

48. Over the following months, Plaintiffs continued to question the status of the vehicles and Mr. Oliver continued to reassure them that things were on track to deliver the vehicles.

49. But, come September of 2023, no vehicle was delivered.

50. Around September 19, Mr. Oliver told Plaintiffs that while Ferrari wouldn't give any hard commitments, it had confirmed that the vehicles would be shipping in October.

51. A few days later, Mr. Oliver claimed that the delay was because the car was "a really challenging config" Ferrari was still working on it.

52. Throughout the following months, Plaintiffs continued to demand information from Mr. Oliver.

53. Around September of 2023, the United States Department of Homeland Security filed an affidavit explaining probable cause existed to believe that wire fraud and money laundering were occurring with respect to the fraudulent sale of sports cars by another client of Mr. Oliver, Travon Rogers. *See*

54. The affidavit explained a scheme by which Mr. Rogers impersonated other individuals and obtained money from multiple victims through Mr. Oliver and his firm on fraudulent vehicle purchases very similar to Plaintiffs' situation.

55. The form of contract used by Mr. Oliver for Mr. Rogers was substantially identical to the form used with Plaintiffs.

56. As late as the end of 2024 and beginning of 2025, Mr. Oliver continued to claim Mr. Hioe was going to deliver, claiming he was "completely confident" and that he was about to visit the car to take pictures of the same.

57. No pictures were ever provided.

58. Around February 18, 2025, a lawsuit was filed in this Court known as *Michael Mente v. Scott Oliver, et al.*, Cast No. 1:25-cv-00525.

59. The *Mente* lawsuit details that an alleged criminal and alleges scam artist known as Traven Rogers had worked through Mr. Oliver to impersonate a French exotic car dealer by the name of Jean-Pierre M.R. Clement and defraud him out of money using a purported purchase agreement similar to the deal arranged with Mr. Hioe.

60. A few days after the lawsuit was filed, Mr. Oliver sent a letter in which he claimed that there was a "restriction period" until May 30, 2025, and that he was unable to share any pictures of the vehicles "due to the sensitive nature of the situation."

61. By April of 2025, Plaintiffs was demanding answers from Mr. Oliver in writing.

62. Mr. Oliver did not provide any information.

63. Plaintiffs retained counsel in Wisconsin who reached out to Mr. Oliver to demand answers.

64. Mr. Oliver claimed he no longer represented the sellers and continued to claim that the sales were legitimate but provided no meaningful information.

65. On April 7, 2025, a demand letter was sent each seller at the addresses listed in the contract. None responded.

66. On August 25, 2025, Mr. Oliver and Oliver Law Firm LLC executed a tolling agreement with Plaintiffs.

67. Among other things, they agreed to "provide Plaintiffs with a complete copy of all information, documents, and data in their possession" related to the sellers "except for information protected by the attorney client privilege" and a privilege log for any withheld documents.

68. They also represented and warranted that they had "independently determined that the disclosure of non-privileged information is ethical under the Colorado Rules of Civil Procedure and [have] taken all steps that are necessary and appropriate to ensure that the disclosure is not a violation of any of the rules governing the conduct of attorneys in Colorado[.]"

69. Despite repeated inquiries since then, Mr. Oliver has failed to produce any documents, failed to state when documents can be expected, and generally failed to communicate in any way.

70. In the meantime, Plaintiffs uncovered more details about the alleged transaction.

71. Mr. Oliver was working closely with several other individuals, including John Hall and Stuart Phillips in Great Britian.

72. Upon information and belief, Mr. Oliver relied heavily on these individuals, particularly Mr. Phillips, for collecting information on the proposed transactions that Mr. Oliver was brokering locally and the alleged progress on the vehicles.

73. In fact, rather than produce the client files he had agreed to produce, Mr. Oliver had instead reached out to Mr. Phillips and asked him to produce seller's files because Mr. Oliver has none. Mr. Phillips has not done so.

74. Upon information and belief, Mr. Oliver did not, in fact, transfer the deposit funds to the individual sellers as he had represented to Plaintiffs. Instead, Plaintiffs learned he had transferred all of the funds to someone in Taiwan known as Kent Chen.

75. Upon information and belief, Mr. Chen was then arrested and imprisoned for unknown reasons. He may still be in jail in Taiwan.

76. Upon information and belief, as soon as Mr. Chen was imprisoned, all communication from the sellers to Mr. Phillips and Mr. Oliver stopped.

77. On September 23, 2025, a lawsuit was filed in the Colorado District Court against Mr. Oliver on another vehicle scam, *Superfast GMBH v. Scott Oliver, et al.*, Case No. 1:23-cv-02994-SKC-STV.

78. The Superfast lawsuit alleges the same fraudulent scheme that affected Plaintiffs.

79. Based on the foregoing, the vehicle sales were never legitimate and were fraudulent from the beginning. The vehicles do not exist and it is unclear whether the named sellers even exist or if someone involved in the process was stealing another person's identity for the purpose of scamming Plaintiffs out of money.

80. Based on the foregoing, it is clear that Mr. Oliver has no files to produce with respect to any of the sellers.

81. He has not produced any Engagement Agreements or billing statements showing he never had an attorney-client, brokerage, or other relationship with any of the sellers.

82. He has not produced any communication with any of the sellers suggesting he ever had authority to act on their behalf.

83. Though he is a licensed attorney, Mr. Oliver was not in fact acting as an attorney for the sellers here. He was, instead, acting as an unlicensed motor vehicle dealer or broker.

84. He has not produced any documents of any kind suggesting he had performed any kind of due diligence on the existence of the sellers, the existence of the vehicles, protection of the purchase price, or anything else that would be normal, proper, and prudent before inducing Plaintiffs to enter into a transaction of this type.

85. To the contrary, Mr. Oliver assured them that everything was proper and that the secrecy and discretion was necessary due to the nature of the transaction he was brokering.

86. Mr. Oliver, either knowingly or recklessly, induced Plaintiffs to pay his firm millions of dollars on the false promise or delivering vehicles.

87. Mr. Oliver either knew or should have known with the exercise of reasonable diligence and care that he was involved in a multi-million dollar enterprises to defraud.

88. Upon information and belief, Mr. Oliver and Oliver Law Firm LLC profited from their involvement the vehicle scam.

89. To the extent it is determined that sellers were merely being used as a pseudonym for a person or persons unknown, all averments here are intended to reflect the true individual signing the contract or any principal that the signor had agency to bind.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**Against Sellers (Hioe, Makasura, Wong, Park, and Does)**

90. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

91. Plaintiffs entered into a contract with each seller (or a John/Jane Doe going by the name of Handy Hioe) for the purchase of a vehicle.

92. Plaintiffs substantially performed by paying the deposit.

93. Defendants breached by failing to deliver the vehicle or issue a refund.

94. As a result of the breach of contract, Plaintiffs have been damaged.

WHEREFORE, Plaintiff seeks the relief set forth below.

**SECOND CLAIM FOR RELIEF**
**False Statement and Fraudulent Omission**
**Against all Defendants**

95. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

96. Each seller (or a John/Jane Doe going by the name of each seller) represented, directly or through Mr. Oliver, that they had exclusive access to purchase a Ferrari, that they had the right and ability to deliver the vehicle to Plaintiffs. These representations were made, among other times, expressly in the contract.

97. Mr. Oliver and the Oliver Law Firm LLC also made these representations independently, leveraging their credibility as licensed attorneys to bolster the sellers' credibility.

98. Mr. Oliver and the Oliver Law Firm LLC represented that the transaction was legal and proper.

99. These facts were material to the contract.

100. In fact, these representations were false.

101. Defendants either knew they were false or were aware that they did not know if the facts were true or not.

102. Defendants made these representations with the intention that Plaintiff relies.

103. Plaintiff did reasonably rely by entering into the contract, paying money, and forbearing or delaying from taking action to enforce the contract.

104. Defendants did not reveal the true facts. Among other things, Defendants did not reveal that: (1) the vehicles did not actually exist; (2) Mr. Oliver and the Oliver Law Firm LLC had done no diligence whatever to verify the identity of the purported clients or validity of the transactions; or that (3) they were acting illegally under C.R.S. § 44-20-102 by selling motor vehicles in Colorado as a dealer or salesperson without a license to do so.

105. Further false statements and fraudulent omissions were made after the contracts were signed.

106. Defendants also represented that they had paid Ferrari to customize the vehicle, that Ferrari had issued receipts confirming payment by Mr. Hioe, and that the vehicles were being prepared and would be delivered.

107. Mr. Oliver and the Oliver Law Firm LLC repeatedly represented that they had verified the vehicles existed and that they would be delivered within some period of time.

108. Defendants did not reveal the fact that all of the money paid to Mr. Oliver was being paid to one Kent Chen, or that Mr. Chen was incarcerated.

109. In reliance of these further false representations, Plaintiffs did not act sooner to pursue remedies under the contract or law.

110. As a result of Plaintiff's reliance, Plaintiff was damaged.

111. Each seller (or a John/Jane Doe going by the name of Handy Hioe) represented, directly or through Mr. Oliver, that the contract was actually being signed by the individual named.

112. Based on the indicia of fraud discovered since that time, Plaintiffs believe it may be the case that the identity of each seller was also false and another person may have impersonated each seller or falsely claimed to be acting with authority for each seller.

113. In the event that this is proved in discovery, this would be an additional false representation inducing Plaintiff to sign the contract.

WHEREFORE, Plaintiff seeks the relief set forth below.

## THIRD CLAIM FOR RELIEF
### Negligent Misrepresentation
### Against All Defendants

114. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

115. This claim is asserted in the alternative, in the event that the false claims described above were only made negligently.

116. Defendants provided false information to Plaintiff as set forth above.

117. Defendants gave Plaintiff this information in the course of Defendants' business transaction and for the express purpose of guiding Plaintiff in a business transaction.

118. Without limitation, Oliver and the Oliver Law Firm LLC, themselves and as representatives of the sellers, claimed the sellers existed, the vehicles existed, the transaction was proper, and that the money would be used to buy the vehicles.

119. Defendants were reckless or at least negligent in obtaining the information.

120. Without limitation, it was reckless and negligent for Mr. Oliver and the Oliver Law Firm LLC to induce Plaintiffs to enter into multi-million dollar contracts without having done anything to verify the identity of the supposed clients or the validity of the proposed deal, without revealing to Plaintiff that no diligence had been done, no engagement agreement exists, no communication directly with the purported seller existed, that all communications were through an intermediary named "Kent Chen," that Kent Chen was in jail, that they had been involved in similar vehicle scams such as the Mente situation, and otherwise.

121. Defendants gave this information to Plaintiff with the intent that Plaintiff would rely on it.

122. Plaintiff did rely on this information.

123. As a result of this reliance, Plaintiff was damaged.

WHEREFORE, Plaintiff seeks the relief set forth below.

**FOURTH CLAIM FOR RELIEF**
**Theft by Deception – C.R.S. §§ 18-4-401 and 405**
**Against All Defendants**

124. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

125. Defendants obtained, retained, and controlled Plaintiff's property, namely, a deposit payment.

126. Defendants obtained this money by deception.

127. Defendants intended to permanently deprive Plaintiff of the money.

128. Defendants knowingly used, concealed, or abandoned the thing of value in such a manner as to deprive Plaintiff permanently of the money.

129. Defendants used, concealed, or abandoned the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit.

130. Defendants knowingly retained the thing of value for more than seventy-two hours after an agreed upon time for return.

131. Defendants therefore committed theft as defined by C.R.S. § 18-4-401.

132. Plaintiff is entitled to a private right of action under the Rights in Stolen Property Statute. C.R.S. § 18-4-405.

WHEREFORE, Plaintiff seeks the relief set forth below.

**FIFTH CLAIM FOR RELIEF**
**Deceptive Trade Practices – C.R.S. § 6-1-105**
**Against All Defendants**

133. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

134. Defendants acted in the course of their business, vocation, or occupation.

135. Defendants committed a deceptive trade practice by taking actions including, without limitation: either knowingly or recklessly made a false representation as to the source, sponsorship, approval, or certification of goods, services, or property; either knowingly or recklessly made a false representation as to affiliation, connection, or association with or certification by another; either knowingly or recklessly used deceptive repressentations or designations of geographic origin in connection with goods or services; and advertised goods or services with the intent not to sell them as advertised.

136. Defendants' deceptive trade practice has significantly impacted the public, with numerous victims of a nearly identical scam coming forward all related to individuals allegedly represented by Mr. Oliver.

137. Defendants' deceptive trade practice has caused damage or losses.

138. Defendants acted in bad faith.

WHEREFORE, Plaintiff seeks the relief set forth below.

**SIXTH CLAIM FOR RELIEF**
**Breach of Warranty**
**Against All Defendants**

139. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

140. The contract contained express warranties concerning the nature of the goods and Defendants' ability to deliver them.

141. The Colorado Uniform Commercial Code imposes a warranty as a matter of law that the seller has good title and is free from all liens or interests other than specified in the contract. C.R.S. § 4-2-312.

142. Defendants breached these warranties as described above.

143. As a result of these breaches of warranties, Plaintiff has been damaged.

WHEREFORE, Plaintiff seeks the relief set forth below.

**SEVENTH CLAIM FOR RELIEF**
**Non-delivery of Goods – C.R.S. §§ 4-2-711, 712, 713.**
**Against All Defendants**

144. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

145. Plaintiff was a buyer of goods.

146. Defendants was a seller of goods.

147. Defendants failed to deliver the purchased goods.

148. Plaintiff is entitled to remedies under Article 2 of the Uniform Commercial Code in addition to all other remedies.

WHEREFORE, Plaintiff seeks the relief set forth below.

**EIGHTH CLAIM FOR RELIEF**
**Colorado Organized Crime Control Act -**
**Against All Defendants**

149. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

150. The scam to sell vehicles constitutes an "enterprise" under the Colorado Organized Crime Control Act. C.R.S. § 18-17-103(2).

151. The multiple acts of theft by deception against Plaintiffs and third parties including Mr. Menthe and Superfast are "racketeering" under the COCCA. §§ 18-17-103(5)(b)(I).

152. Upon information and belief, Defendants have engaged in a “pattern” of racketeering activity because they have committed theft by deception in multiple instances. C.R.S. § 18-17-103(2).

153. It is unlawful for Defendants to use or invest any proceeds from its racketeering activity in the operation of the enterprises.

154. It is unlawful for any of the parties, including the Does, to knowingly conduct or participate, directly or indirectly, in the racketeering activity or enterprise.

155. As a result of Defendants racketeering enterprises, Plaintiffs have been damaged.

156. Plaintiffs may enforce the Colorado Organized Crime Control Act. C.R.S. § 18-17-106(6).

**NINTH CLAIM FOR RELIEF**
**RICO - 18 U.S.C § 1962(c)**
**Against All Defendants**

157. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

158. Defendants are persons within the meaning of RICO.

159. The scheme to defraud individuals using fraudulent names and promises of exclusive sports cars is an enterprise within the meaning of RICO.

160. The Oliver Law Firm LLC is also an “enterprise” under the statute.

161. The enterprise directly impacts interstate and foreign commerce.

162. The enterprise committed predicate acts including theft by deception, mail fraud under 18 USC § 1341, and other acts.

**TENTH CLAIM FOR RELIEF**
**Breach of Contract**
**Against Scott Oliver and Oliver Law Firm LLC**

163. Plaintiffs incorporate all other averments of this Complaint as if set forth here.

164. Plaintiffs entered into a contract with Defendants regarding, among other things, production of non-privileged information.

165. Plaintiffs substantially performed.

166. Defendants breached by failing to produce the promised information.

167. As a result of the breach of contract, Plaintiffs have been damaged.

WHEREFORE, Plaintiff seeks the relief set forth below.

## PRAYER FOR RELIEF

Relator seeks the following relief:

DAMAGES to be established at trial but to include return of the deposit paid by Plaintiff, the amount necessary to cover replacement goods, incidental and consequential damages, the value of lost opportunity, treble damages as provided in Colorado statutes including without limitation the Rights in Stolen Property Act and the Deceptive Trade Practices Act, disgorgement of all profits or proceeds of Defendants from any racketeering activity or enterprise, attorney fees, costs, pre- and post-judgment interest, and other amounts.

## RIGHT TO AMEND

Plaintiff respectfully reserves the right to amend this Complaint as additional or supplemental facts and information become known or for any other reason. Plaintiff anticipates learning additional information about the fraudulent scheme and contract which very well may give rise to additional parties or claims and the identification of the original John/Jane Does. Plaintiff asserts that all amendments related to such late-discovered information shall relate back to the date of this original filing under Fed.R.Civ.P. 15.

## GOOD FAITH CHANGE IN THE LAW

To the extent that this Court determines all or any of Plaintiff's claims fail to state a claim upon which relief is to be granted, in that event Plaintiff states that the claim was brought for the purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation and

identifies the authority relied upon justifying any dismissal as the authority to extend, limit, modify, or reverse.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims, defenses, and issues in this dispute.

DATED: December 19, 2025:

**MORIARTY UNDERHILL LLC**

*/s/Colin Moriarty*
Colin E. Moriarty, #36865
7350 East Progress Place, Suite 110
Greenwood Village, Colorado, 80111
Telephone: (303) 721-7112
Email: Colin@UnderhillLaw.com

**COUNSEL FOR PLAINTIFF**